J. S27027/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
v. :
:
RAFE ANTHONY DUNN, JR., :
:
Appellant : No. 1273 MDA 2015

Appeal from the PCRA Order June 29, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division No.: CP-22-CR-0005197-2010

BEFORE: SHOGAN, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.: **FILED JUNE 07, 2016**

Appellant, Rafe Anthony Dunn, Jr., appeals from the order entered in

the Dauphin County Court of Common Pleas denying his first Petition filed

under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.

After careful review, we affirm on the basis of the PCRA court's Opinion.

A jury convicted Appellant of First-Degree Murder, Robbery, and

Firearms Not To Be Carried Without A License.[1] The underlying facts, as

summarized in this Court's memorandum decision disposing of Appellant's

direct appeal, are as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a); 18 Pa.C.S. § 3701(a); and 18 Pa.C.S. § 6106, respectively.

Aaron Moon, an 18-year-old friend of the victim, Gaquan Fry, was with Fry the day he was shot. Moon testified that on August 31, 2010, Fry picked him up from a memorial service Moon had attended in honor of his late cousin. Moon and Fry were headed to Moon's home in Steelton, but Fry wanted to make one stop to meet "his boy." When Fry stopped the car, he told Moon that [Appellant] "Rafe" wanted to buy some "green," or marijuana. Moon testified that he had known [Appellant] for one month, and that Fry had sold marijuana to [Appellant] on previous occasions. [Appellant] approached the car and told Fry to get out and follow him. Moon watched the two of them walk up the street towards Ella Alley, and eventually lost sight of them. After approximately 2 to 3 minutes, a young man ran up to Fry's car, asked Moon if he was with [Fry], and proceeded to tell him that Fry had been shot by [Appellant] in the alley. Moon got out of the car, headed down the alley, and saw Fry lying on his stomach. Closer examination by Moon revealed that Fry had been shot. At trial, Moon identified [Appellant] as the one who met with Fry on the evening in question and accompanied him in the alley.

Matthew Armstrong testified that he was the person who approached Moon to let him know that Fry had been shot. Armstrong, who was acquainted with [Appellant], was close enough to hear the gunshot in question. Immediately after hearing the shot, Armstrong saw [Appellant] near the alley. Armstrong asked [Appellant] why he had shot Fry and [Appellant] denied doing so, telling Armstrong he "shot to scare him." When asked if [Appellant] had ever discussed anything with him prior to the shooting incident, Armstrong replied that [Appellant] asked him if he wanted to help him rob Fry.

Another acquaintance of [Appellant], Paige Laganella, testified that on the evening in question between 8:30 and 8:45 p.m., [Appellant] showed up in her alleyway and said he needed to tell her something. Laganella attested that [Appellant] said, "he thinks he did something very serious and he…said he shot someone and doesn't know if they are dead." She stated that [Appellant] said, "he was going to rob him and it went wrong and he got scared." Another witness, Desire Rose Nadjek, confirmed that [Appellant] had revealed the same information to her.

- 2 -

> Wayne Ross of the Coroner's office confirmed that Fry had been shot in the chest at close range and that the time of death was August 31, 2010 at 8:31 p.m.

*Commonwealth v. Dunn*, No. 1871 MDA 2011 (Pa. Super. filed June 12, 2012) (unpublished memorandum) (quoting Trial Court Opinion, filed 2/3/12, at 2-3).

> Appellant was tried before a jury on June 25-27, 2011. The trial court deferred sentencing until September 12, 2011, when it sentenced Appellant to life in prison without parole on the first-degree murder conviction, as well as concurrent sentences of ten to twenty years of imprisonment on the robbery conviction, and three to six years of imprisonment on the conviction of firearms not to be carried without a license. The trial court additionally fined Appellant $5,000 as part of his robbery sentence. On September 22, 2011, Appellant filed a post-sentence motion, which the trial court denied on September 28, 2011.

*Commonwealth v. Dunn*, No. 1871 MDA 2011 (Pa. Super. filed June 12, 2012) (unpublished memorandum).

Appellant filed a direct appeal. We affirmed Appellant's Judgment of Sentence on June 12, 2012. Our Supreme Court denied Appellant's Petition for Allowance of Appeal on January 17, 2013. *Commonwealth v. Dunn*, No. 475 MAL 2012 (Pa. filed January 17, 2013).

Appellant filed the instant *pro se* PCRA Petition, his first, on January 6, 2014, and the PCRA court appointed counsel. Appellant filed an Amended PCRA Petition on September 22, 2014, raising several claims of ineffective assistance of counsel. The PCRA court conducted a hearing on November 6,

2014, and the PCRA court permitted Appellant to amend his Petition to challenge the legality of his sentence by raising **Alleyne**.[2]

On June 29, 2015, the PCRA court denied Appellant's Petition. Appellant filed a Notice of Appeal on July 24, 2015. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises four issues on appeal:

1. Whether the Appellant's statement made to the police was involuntary due to the Appellant's intoxication?

2. Whether trial counsel was ineffective for failing to file a suppression motion?

3. Whether trial counsel was ineffective for failing to call character witnesses?

4. Whether the Appellant is serving an illegal sentence, as there was no statutory authorization?

Appellant's Brief at 6 (suggested answers and capitalization omitted).

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's

---

[2] **Alleyne v. United States**, __ U.S. __, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013).

legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012).

To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2). Appellant must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

Two of Appellant's issues on appeal are claims of ineffective assistance of trial counsel. The law presumes counsel has rendered effective assistance. ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on Appellant. ***Id***. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different." ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003).

The Honorable Scott Arthur Evans, sitting as the PCRA court, has authored a comprehensive, thorough, and well-reasoned opinion, citing to the record and relevant case law in addressing Appellant's claims on appeal. After a careful review of the parties' arguments and the record, we affirm on the basis of the PCRA court's Opinion. **See** PCRA Court Opinion, dated 6/29/15, at 3-9 (concluding that: (1) Appellant waived his first issue regarding the voluntariness of his confession because he failed to litigate the issue in the trial court and in his direct appeal; (2) Appellant's trial attorneys were not ineffective for failing to file a suppression motion because the motion lacked merit, his attorneys cited a reasonable and strategic reason to allow his confession into evidence, and Appellant could not demonstrate the outcome of the proceedings would have been different; (3) Appellant's trial attorneys were not ineffective for failing to call character witnesses because that would have opened the door to Appellant's prior adjudications and Appellant could not demonstrate prejudice; and (4) Appellant's claim that no statutory authority exists for his life sentence is meritless; **Alleyne** has no application to Appellant's sentence and it has not been held to be retroactive).

The parties are instructed to attach a copy of the trial court's Opinion to all future filings.

Order affirmed. Jurisdiction relinquished.

President Judge Emeritus Stevens joins this Memorandum.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2016

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
:
:
vs. : NO. 5197-CR-2010
:
:
:
RAFE ANTHONY DUNN :
:

## MEMORANDUM OPINION

Rafe Anthony Dunn was convicted of First-Degree Murder, Robbery, and Firearms Not to be Carried Without a License following a jury trial held on July 25th through July 27th, 2011. On September 12, 2011, Defendant was sentenced to life in prison without parole on the murder conviction, ten (10) to twenty (20) years of imprisonment for the robbery (concurrent), and three (3) to six (6) years on the firearms violation (concurrent). Defendant was also ordered to pay $5,000 in fines and costs. Defendant's post-sentence motion was denied by this Court, and an appeal to the Superior Court followed. On appeal, Defendant challenged his fines/costs as excessive, claimed that the verdict was against the weight of the evidence, and that there was insufficient evidence for first-degree murder. On February 12, 2013, the Superior Court affirmed Defendant's judgment of sentence.

On January 6, 2014, Defendant filed a PCRA petition.[1] Attorney Jennifer Tobias filed an amended PCRA petition on Defendant's behalf on September 22, 2014. A PCRA hearing was held before this Court on November 6, 2014.

The following testimony/evidence was elicited at Defendant's trial: Aaron Moon, an 18-year-old friend of the victim, Gaquan Fry, was with Gaquan the day he was shot. Moon testified

---

[1] The McShane Firm was originally appointed to represent Defendant in his quest for PCRA relief, but the appointment was later vacated in favor of Attorney Jennifer Tobias.

1

that on August 31, 2010, Fry picked him up from a memorial service Moon had attended in honor of his late cousin. [Notes of Testimony, July 25, 2011, p. 19]. Moon and Fry were headed to Moon's home in Steelton, but Fry wanted to make one stop to meet "his boy." [N.T., 7-25-11, p. 20]. When Fry stopped the car, he told Moon that Defendant "Rafe" wanted to buy some "green," or marijuana. [N.T., 7-25-11, pp. 21-22]. Moon testified that he had known Defendant for one month, and that Fry had sold marijuana to Defendant on previous occasions. [N.T., 7-25-11, p. 22]. Defendant approached the car and told Fry to get out and follow him. Moon watched the two of them walk up the street towards Ella Alley, and eventually lost sight of them. [N.T., 7-25-11, p. 22]. After approximately 2 to 3 minutes, a young man ran up to Fry's car, asked Moon if he was with "G,"[2] and proceeded to tell him that Fry had been shot by Defendant in the alley. [N.T., 7-25-11]. Moon got out of the car, headed down the alley and saw Fry lying on his stomach. Closer examination by Moon revealed that Fry had been shot. [N.T., 7-25-11, pp. 23-24]. At trial, Moon identified Defendant as the one who met with Fry on the evening in question and accompanied him in the alley. [N.T., 7-25-11, pp. 26, 31].

Matthew Armstrong testified that he was the person who approached Moon to let him know that Fry had been shot. [N.T., 7-25-11, p. 42]. Armstrong, who was acquainted with Defendant, was close enough to hear the gunshot in question. Immediately after hearing the shot, Armstrong saw Defendant near the alley. Armstrong asked Defendant why he had shot Fry and Defendant denied doing so, telling Armstrong he "shot to scare him." [N.T., 7-25-11, pp. 41-42]. When asked if Defendant had ever discussed anything with him prior to the shooting incident, Armstrong replied that Defendant asked him if he wanted to help him rob Fry. [N.T., 7-25-11, p. 43].

---

[2] It was established earlier in the testimony that "G" refers to Gaquan Fry, the victim. [N.T., 7-25-11, p. 21].

Another acquaintance of Defendant, Paige Laganella, testified that on the evening in question between 8:30 and 8:45 p.m., Defendant showed up in her alleyway and said he needed to tell her something. Laganella attested that Defendant said that "he thinks he did something very serious and he … said he shot someone and doesn't know if they are dead." [N.T., 7-26-11, pp. 25-26]. She stated that Defendant said that "he was going to rob him and it went wrong and he got scared." [N.T., 7-26-11, p. 26]. Another witness, Desire Rose Najdek, confirmed that Defendant had revealed the same information to her. [N.T., 7-26-11, pp. 32-34].

Wayne Ross of the Coroner's office confirmed that Fry had been shot in the chest at close range and that the time of death was August 31, 2010 at 8:31 p.m. [N.T., 7-26-11, p. 7].

In the PCRA petition, Defendant asserts that his trial counsel was ineffective for various reasons.[3] Specifically, Defendant requested that an evidentiary hearing be held on counsel's failure to file a suppression motion, failure to interview and present witnesses on behalf of Defendant, and failure to call character witnesses.

Additionally, at the start of the PCRA hearing, Defendant was permitted by the Court to amend his PCRA petition to present another issue. Specifically, Defendant claims that he was sentenced illegally, as there was no statutory authorization to impose a mandatory minimum sentence for the crime of murder. [PCRA Hearing, Notes of Testimony, November 6, 2014, p. 4].

Defendant was the first witness called at the hearing. He testified that his *Miranda* rights were not read to him at the beginning of his statement to police officers. [N.T., 11-4-14, p. 6]. Defendant stated that when he was asked at the end of his statement if his *Miranda* rights had been read to him, he answered "yes," claiming he was distraught, scared, confused, handcuffed,

---

[3] In addition to the ineffective assistance of counsel issues, Defendant also claimed that his constitutional rights had been violated; however, PCRA counsel acknowledged that these issues have been waived.

3

had not slept or eaten for 36 to 48 hours, and was ready to get out of the interrogation room. [N.T., 11-4-14, pp. 6-7]. When asked if he was under the influence of drugs or alcohol at that time, Defendant answered yes. He claimed that he had smoked approximately three (3) to four (4) blunts of marijuana and had consumed alcohol – approximately three (3) to five (5) shots of vodka - earlier that morning. [N.T., 11-4-14, pp. 7-8]. Defendant testified that he was smoking the marijuana when Detective Donald Heffner arrived to question him. [N.T., 11-4-14, pp. 7-8]. At that point, he stated, "everything was moving so fast," and he never asked for an attorney, was handcuffed before the statement began, and even if he was *Mirandized*, he was unable to give a coherent statement. [N.T., 11-4-14, pp. 9-11]. Defendant stated at the time of questioning that he told Detective Heffner that he was high on weed.

On cross-examination, Defendant testified that it was around 2:30 p.m. when he was apprehended, and the questioning started at 3:17 p.m., according to the statement. [N.T., 11-4-14, pp. 29-30]. Defendant also acknowledged that in the statement given to Detective Heffner, he said that the last time he smoked marijuana was an hour before the detective knocked on his door, that he had not been drinking, that he was high, but answered "yes" to whether he understood "what was going on here today." [N.T., 11-4-14, p. 32]. When asked why he would lie about understanding what was going on, Defendant reiterated that everything was moving fast, and that he was scared when placed in the interrogation room. [N.T., 11-4-14, pp. 32-33]. When asked again if he were *Mirandized*, Defendant said no. [N.T., 11-4-14, p. 33]. At that point, Defendant's attention was directed to the transcribed interrogation. Such transcription revealed that Defendant had answered "yes" to whether he had his rights read to him, that he had the right to remain silent, that anything he said can and will be used against him in a court of law,

4

that he had a right to an attorney and that one would be given to him at no cost, and that he understood these rights. [N.T., 11-4-14, p. 34].

Defendant's trial attorney, Paul Muller of the Dauphin County Public Defender's Office, testified at the hearing. When asked about filing a suppression motion on behalf of Defendant, Attorney Muller responded: "The problem, essentially, is this is not a case where it was just his statement implicating him. There had been confessions or statements to multiple people after the incident where he admitted culpability. So even getting the statement suppressed, even if that were possible, would not have been the be all to end all in this case." [N.T., 11-4-14, p. 41]. Attorney Muller went on to explain that the trial strategy in this "textbook second degree felony murder case" was to just try to convince the jury to see it as a third degree murder; that it was an accidental shooting and Defendant did not try to kill the victim. [N.T., 11-4-14, pp. 41-42]. Attorney Muller viewed getting Defendant's statement in as more of a plus than a minus, as he "came across pretty well," was remorseful, and he did not think that Defendant was going to be able to testify due to a prior felony burglary that would have come out if he took the stand. [N.T., 11-4-14, p. 42]. Moreover, Attorney Muller testified that the recording of Defendant's statement and transcription of his statement clearly shows he was coherent. [N.T., 11-4-14, pp. 43-44].

As to character witnesses, Attorney Muller found no notes or notations regarding character witnesses in the file. He further stated that even if it had been discussed, it is not something that would have been pursued because character witnesses serve a very limited purpose, and it would have opened the door to Defendant's previous burglary adjudication. [N.T., 11-4-14, p. 45].[4] At the conclusion of the PCRA hearing, Attorney Tobias stated: "There

---

[4] Co-Counsel Nathan Giunta's testimony at the hearing was consistent with Attorney Muller's testimony. [N.T., 4-11-14, pp. 51-55].

5

are some witnesses, in particular Mr. Dunn's mother and father, that are here, but we are just going to stipulate – Mr. Dunn agreed to it and so did the district attorney – that if they would have been called at trial, they would have testified on his behalf." [N.T., 11-4-14, p. 63]. Attorney Tobias clarified that such testimony would have been focused on Defendant's non-violent nature. [N.T., 11-4-14, p. 63].

Detective Donald Heffner of the Harrisburg Bureau Police, also testified at the hearing. He stated that he twice gave Defendant his Miranda warnings, once when Defendant was apprehended, arrested, and placed in the patrol car, and again prior to Defendant's statement at the police station. [N.T., 11-4-14, pp. 56-57]. Detective Heffner stated that Defendant told him he was under the influence of marijuana. When asked if Defendant appeared to be under the influence, Detective Heffner replied no. [N.T., 11-4-14, p. 57]. "[H]is conversation, his physical condition, his ability to form answers in a complete and forward manner, all the indications that he understood what was going on was there." [N.T., 11-4-14, p. 58].

Under the PCRA, a defendant claiming ineffective assistance must plead and prove that (1) the issue underlying a claim of ineffectiveness must be of arguable merit; (2) trial counsel did not have a reasonable basis for the act or omission in question; and (3) trial counsel's act or omission had an adverse effect on the outcome of the proceedings, in other words, but for the errors and omissions of trial counsel there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999). On claims of ineffective assistance of counsel, there is a presumption that trial counsel was effective and the petitioner bears the burden of proving otherwise. *Commonwealth v. Miller*, 431 A.2d 233, 235 (Pa. 1981).

6

Furthermore, for an ineffectiveness claim to be cognizable under the PCRA, a petitioner must prove, by a preponderance of the evidence, that his sentence resulted from ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. Section 9543(a)(2)(ii).

This Court does not find that the suppression motion would have merit. However, should one believe Defendant's claim that trial counsel was ineffective for failing to file a suppression motion would possibly have arguable merit, it fails to satisfy the remaining requirements. Attorney Muller, confirmed by Attorney Guinta, set forth a reasonable basis for not filling the pre-trial motion. Specifically, that Defendant's statement was perceived as somewhat beneficial in light of the fact that the attorneys did not believe Defendant should testify. Thus, getting the statement in was viewed as more of a plus than a minus, as a vehicle that would allow the attorneys the opportunity to get into some of the facts without putting Defendant on the stand. Moreover, the testimony revealed that in all likelihood, failing to file a suppression motion would not have changed the outcome of the proceedings. Attorney Muller made it clear that this was not a case where the statement was the only thing implicating Defendant. Rather, there were confessions/statements to multiple others where Defendant admitted culpability, so even assuming the statement would have been suppressed, the verdict would have likely remained the same. Accordingly, Defendant's claim fails. *Kimball, supra.*

The same reasoning holds true for Defendant's claim that trial counsel was ineffective for failing to call character witnesses. Not only were there no notes or lists of witnesses in the file, according to trial counsel, but such witnesses would not have been pursued, as such testimony would have opened the door to Defendant's prior adjudications. There clearly existed a

7

reasonable basis for not calling character witnesses and doing so would likely not have changed the outcome of the case. *Kimball, supra.*

Finally, Defendant has challenged trial counsel's effectiveness for failing to contest an illegal sentence. Specifically, Attorney Muller was presented with the following question at the hearing: "The last claim under ineffectiveness – and just hearing the testimony today, and I apologize – he has indicted ineffectiveness of counsel for failing to challenge the illegal sentence that was imposed. Do you have any rebuttal on that? I know this is the first you are hearing of it." [N.T., 11-4-14, p. 46]. In response, Attorney Muller testified that such issue was decided after Defendant's trial, specifically, the case of *Alleyne v. United States*, 133 S.Ct. 2151 (2013). [N.T., 11-4-14, p. 46].

In *Alleyne*, the United States Supreme Court held that any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury. Consequently, the *Alleyne* decision has rendered those Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard. *See Commonwealth v. Watley*, 81 A.3d 108 (Pa. Super. 2013). *See also Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014).

Defendant Dunn's trial was held in late July, 2011. He was sentenced on September 12, 2011, filed a notice of appeal on October 26, 2011, and the Superior Court affirmed his judgment of sentence on February 12, 2013. The *Alleyne* case was not decided until June 17, 2013. Clearly counsel cannot be deemed ineffective for failing to argue a change in the law that had not

8

yet occurred. Moreover, "even assuming that *Alleyne* did announce a new constitutional right, neither our Supreme Court, nor the United States Supreme Court has held that *Alleyne* is to be applied retroactively to cases in which the judgment of sentence had become final." *Commonwealth v. Miller*, 102 A.3d 988, 995 (2014).

In light of the foregoing, this Court finds that Defendant's claims do not warrant PCRA relief.

BY THE COURT:

Scott Arthur Evans, Judge

DATED: June 29, 2015

Distribution:
Joseph P. Cardinale, Jr., District Attorney's Office
Jennifer Tobias, Esq., 3699 Cutler Court, Stewartstown, PA 17363
Chambers of Judge Scott Arthur Evans



RECEIVED
OFFICE OF
CLERK OF COURT
2015 JUN 29 PM 3:28
DAUPHIN COUNTY
PENNA

9